## ARAM and others *v.* MOLINE WAGON CO.

*(Circuit Court, N. D. Illinois. 1883.)*

1. PATENTS FOR INVENTIONS—ANTICIPATION—PATENT No. 127,211 SUSTAINED.

    Patent No. 127,211, granted to Jonathan G. Aram and Robert S. Williams, May 28, 1872, for an improvement in machines for turning carriage axles, compared with the patents granted August 16, 1870, to William H. Heffley and David Barb, patent No. 130,782, issued to Reuben Zeider, August 20, 1872, and a machine invented by Thomas Blanchard, and *held* not anticipated by such inventions, and not void for want of novelty.

2. SAME—CLAIM—INFRINGEMENT.

    The new thing that plaintiff invented was the pivoted bar, carrying the knife upon one end, and with its motions controlled by the revolutions of the other end within the hollow pattern; but, to make this work effectively, he combined with it certain old and well-known mechanical devices, such as the feed-screw, sliding fulcrum block, slide-ways, and gearing-wheels, by which the fulcrum block and pivoted bar were to be revolved; and the claim in his patent should not be construed as a mere combination claim of old elements, but as a claim for the pivoted bar, which was a new element brought into the art by him and made efficient when used with these older devices, and in this view of the claim his invention is infringed by the machine of defendants.

In Equity.

*John G. Manahan* and *Charles H. Roberts,* for complainants.

*Rowland Cox* and *Banning & Banning,* for defendant.

BLODGETT, J. This is a bill in equity to enjoin infringement of letters patent to Jonathan G. Aram and Robert S. Williams, No. 127,211, dated May 28, 1872, for an improvement in machines for turning carriage axles; and for profits and damages. The defenses relied upon are: *First,* that complainants' patent is void for want of novelty; *second,* that defendant does not infringe.

The use to which complainants' device has, so far, been applied is for turning the ends of wagon axles, so that they will accurately fit into the thimble skeins; although it may, perhaps, as suggested by the inventor, be utilized for many other purposes. The distinguishing feature of the Aram machine is a bar pivoted at its longitudinal center, one end of which carries the cutting tool and the other end revolves inside of the thimble, or pattern, which is intended to fit the axle or other article to be shaped; the principle upon which the machine operates being that the end of the bar carrying the cutter will describe the same circular or eccentric movement as the other end of the bar moving within the hollow pattern, except that the cutter end will move in the reverse direction from the end within the pattern, so that if there is a bulge or enlargement within the pattern,

a corresponding knob or enlargement will be turned upon the stick or article to be operated upon, thereby shaping the article turned so that its external surface corresponds to the internal surface of the pattern.

Upon the issue of want of novelty the defendant relies upon—*First*, the patent granted by the United States, August 16, 1870, to William H. Heffley and David Barb, for an improved machine for turning axles; *second*, United States patent No. 130,782, issued to Reuben Zeider, dated August 20, 1872; *third*, the machine of Thomas Blanchard for turning shoe-lasts, gunstocks, and other crooked or irregular surfaces.

The Heffley patent bears date nearly two years earlier than the Aram patent, and if it contained the essential characteristic of the complainant's machine, or suggested the main element upon which the Aram machine depends for success, it might be considered a defense. But there is no proof that a working machine was ever built under the directions given by Heffley in his specifications, and I think it hardly needs expert testimony or the opinion of skilled mechanics to show that a machine constructed according to Heffley's specifications would be of no practical use. It is true that he provides that a guide to his cutting tool shall revolve within the cavity or hollow of the skein, but the devices for transmitting to the cutter the movements of the guide are so complicated as to be evidently of no practical value, and they do not, as it seems to me, tend to suggest the simple but effective device for the same purpose shown in the Aram patent. The Heffley device is not only evidently inoperative by reason of its complicated construction, but it is organized to begin its work at the wrong end of the timber, and could never be made to operate successfully.

The Zeider patent bears a later date by some months than Aram's, but the attempt is made, by the proofs in this case, to carry his invention back of the date of Aram's invention. In July, 1870, Aram began his experiments, and in November or December, 1871, he had built and in successful operation a working machine embodying the essential features of his patent; while Zeider does not seem to have ever made a working machine till after the issue of his patent.

I have no doubt from the proof that Aram's invention antedates Zeider's, and that without any knowledge of Zeider's experiments he prosecuted his own experiments to a successful working machine, long before Zeider ever embodied his device in either model or drawings. Indeed, I did not understand the defense as placing any reliance at

the hearing on the Zeider patent as older in the art, or as having anticipated Aram's invention. I am, therefore, fully satisfied from the proof that neither the Heffley nor Zeider machines can be held to defeat the complainants' patent for want of novelty. So, also, in regard to the invention of Thomas Blanchard for turning shoe-lasts, etc. I am clear that this does not anticipate the Aram invention, as Aram's device works upon an entirely different principle from Blanchard's. I therefore do not find this patent void for want of novelty.

Defendant, however, contends that it does not infringe, because it is insisted that Aram's device is for a combination only of certain parts,—the cutter-bar, D, sliding fulcrum block, H, feed-screw, G, and ratchet mechanism,—arranged in a revolving carriage and in relation to a suitable pattern; and that the ratchet mechanism called for in this combination is not found in defendant's machine. The function of this ratchet mechanism is to work the feed-screw. In defendant's machine the feed-screw is worked by means of cog gearing. Aram's ratchet is but a single cog; more ratchets would have made a cog-wheel, and defendant's cog-wheel is a mere substitute for Aram's ratchet. The feed-screw is an old mechanical device; its function in the Aram machine, as well as in defendant's machine, is to move the fulcrum block longitudinally, so as to carry the cutting tool forward and enable it to do its work. This feed-screw, with the device by which it is operated, is a mere adjunct to the leading feature of Aram's invention, which was the centrally-pivoted bar carrying the knife upon one end, and with its motions controlled by the revolutions of the other end within the hollow pattern. This feed-screw and ratchet simply carried the knife forward as fast as it cut away the wood. This could undoubtedly have been done by other mechanical devices well known in the art at the time of Aram's invention. And I cannot sanction the position contended for by defendant's counsel, that Aram's central thought, the thing which he invented, and which makes his machine useful and valuable by reason of its simplicity and effectiveness, can be taken from him with impunity simply because defendant uses it in combination with a slightly-different device for securing the necessary longitudinal movement. It seems to me too narrow and circumscribed a construction of Aram's invention to hold that he can only use his pivoted bar, without which none of these machines would have any value, in combination with such a ratchet as he specifically shows for working his feed-screw. He was required by the patent law to show an operative machine—to teach

the world how this pivoted bar could be made to do its work so as to cut an external surface to fit an internal surface. To do this, it was necessary the cutter should move longitudinally, and the feed-screw would naturally suggest itself for that purpose.

The modes of operating this feed-screw were various, and I cannot subscribe to the position that because Aram described a ratchet he was, therefore, compelled to use a ratchet, and that only, with his invention. The testimony abundantly shows that the new thing which Aram invented was the pivoted bar, and that to make this work effectively he combined with it certain old and well-known mechanical devices, such as the feed-screw, the sliding fulcrum block, slide-ways, and gearing-wheels, by which the fulcrum block and pivoted bar were to be revolved. In the light of the proof I do not think the claim in this patent should be construed as a mere combination claim of old elements; but it is, I think, a claim for the pivoted bar, which was a new element, brought into the art by Aram, and made efficient when used with these older devices.

In regard to the argument made by defendant from the proofs of the contents of the file wrapper of complainant's patent, I do not think, as contended by the learned counsel for defendant, that Aram has waived or abandoned any part of his invention, or limited or estopped himself from claiming the full benefit of his invention, by anything shown in these proofs. This proof from the file wrapper simply shows that Aram's original specifications were somewhat crude, and the first, second, and fourth claims were such as could not have been allowed for anything shown in the specifications; that the examiner of the patent-office held that the Heffley patent substantially anticipated Aram's invention; that upon this ruling, Aram obtained leave to withdraw his drawing and specifications, and the next day filed amended specifications containing the same substantial matter as the original, but more artificially and technically stated, with the claim as it now appears in the patent, which is substantially the third claim in his original application. This cannot be construed as an admission that Heffley's patent anticipated Aram's invention, or a concession that Aram's invention is subordinate to or a mere improvement on Heffley. I see nothing in this proof to show that Aram has disclaimed anything which he claimed in his original, or that he was allowed his present claim on condition that he would and did waive a broader claim. I think it very evident from the original application that it was prepared by some one unskilled in such matters,

and with but little knowledge as to what either the description or claim should contain.

I find in defendant's machine all the essential features of the Aram patent; and have no doubt the charge of infringement is fully sustained by the proof. The reissue of these Heffley and Zeider patents cannot help these defendants, as it is palpable that new claims cannot make the Heffley machine operative or practical, nor carry back the Zeider invention to the time or beyond it when Aram had made a successful working machine and a perfected invention.

There will be a decree that complainants' patent is valid, and that defendant infringes the same, and a reference for an accounting as to profits and damages.